The McCaull Dinsmore Co., Appellee, v. Fritzson Grain Co. et al., Appellants.

Sales: FAILURE TO DELIVER: DAMAGES. The defendant in this action contracted for the sale of corn to be delivered during a certain month, and having failed in making delivery during the time specified he recognized and treated the contract as in force for some time thereafter. He also notified the buyer that he would insist on a settlement according to the rules of trade, which required the plaintiff at the end of the specified time for delivery to purchase in the open market. *Held*, that the defendant could not rely on plaintiff's failure to purchase elsewhere on the last day of the time allowed for delivery, and thus defeat recovery for the loss sustained in purchasing elsewhere within a reasonable time thereafter; plaintiff during such time having frequently requested delivery by defendant as agreed.

*Appeal from Woodbury District Court.*—Hon. Wm. Hutchinson, Judge.

Tuesday, June 6, 1911.

'Action at law to recover damages for failure to perform contract for sale of corn.   Judgment for plaintiff, and defendants appeal.   *Affirmed.*

*Shull, Farnsworth & Sammis,* for appellants.

*Pitkin & Smith,* for appellee.

Weaver, J.—The defendants, constituting a partnership, were dealers in grain at Osmond, Neb., and Sioux City, Iowa, and on or about January 4, 1909, entered into an agreement to sell plaintiff five thousand bushels of No. 3 white corn at fifty cents per bushel, to be delivered on the cars at Osmond during said month of January, subject to Burlington, Iowa, weights and inspection. Defendant appears to have found difficulty in obtaining corn of the required kind and grade, and on February 11, 1909, had shipped but one carload containing about one thousand one hundred and seventy-three bushels. Correspondence and oral negotiations upon the subject were had between the parties at frequent intervals over a period of two or three months, plaintiff frequently calling upon the defendant to complete the delivery, and defendants explaining their inability to secure corn of the agreed quality. At one time a proposition was considered to ship corn of a lower grade subject to proportionate diminution in price, but such agreement was never consummated. Finally, on April 20, 1909, plaintiff went into the market and bought corn to the amount necessary to satisfy the defendant's contract, paying therefor seventy-three and one-half cents per bushel. Of this action it at once notified defendant and demanded a settlement on that basis, but defendant repudiated the purchase as unauthorized, saying that it would now settle only "in strict conformity to the conditions of sale." Suit being brought to recover the difference between the contract price of the undeliv-

ered corn and the price at which it was purchased on the market, the defendant answered alleging that after they discovered their inability to procure the grade called for by the contract, the sale was by agreement of the parties mutually abandoned or converted into an agreement to deliver the corn only in the event that defendants succeeded in obtaining it, and failure therein should give rise to no claim for damages. Further answering, it was alleged that under the rules of the trade failure to deliver the corn during the month of January authorized the plaintiff to go into the market on the last day of that month and purchase it, charging to the defendants any loss thus suffered, but that plaintiff failed to exercise this option. and thereby waived all right to recover damages on account of the nondelivery. The issues were tried to the court without a jury, resulting in a judgment for plaintiff for the amount of its demand.

The last-mentioned defense is not pressed upon our attention nor could any reliance be reasonably placed thereon. The record shows that the time of delivery was prolonged to accommodate the defendants, and in their correspondence on that subject they continued for weeks after January 31 to treat their contract to deliver the required amount of corn as still obligatory upon them and offered no suggestion that plaintiff had waived or lost any right by failing to close the deal by purchase in the market at the end of that month. As late as March 4, responding to a telegram to rush the corn forward, they stated the cause of the delay to be the low grade of corn brought in by the farmers. On March 8 they wrote the plaintiff, "In accordance with our conversation today you may better buy back bal. of white corn sold to you. Provided you buy it Chicago as we understood it was sold there. Draw on us through 1st Nat. Bk. here for difference." On March 23 they wrote in a somewhat different tone acknowledging the agreement to sell, and for the

first time suggest that as they are unable to supply the corn and as plaintiff has seemed unwilling to accept offers of settlement they "must insist on settle same as per your confirmation and rules of trade." During the next thirty days plaintiff made the purchase on the market to which we have alluded. Under such circumstances we are very clear defendants are in no position to claim any advantage from plaintiff's indulgence in extending the time of delivery beyond January 31.

Nor are we able to find any evidence of an agreement, express or implied, to relieve the defendants from the obligation of their contract except in the extension of the time of delivery. In none of the letters on either side is anything said of abandoning the deal, and when notified of plaintiff's act in purchasing the corn to complete the delivery no objection was raised by defendants on the score that they had been relieved of the duty to furnish it. Indeed, the most that can be inferred from the manner in which their dealings were carried on after January 31 is that strict time of delivery was waived and defendants given the privilege to make it within a reasonable period thereafter. Plaintiffs waited until April 20, and then after repeated and urgent requests of the defendants to furnish the corn, went into the market and bought it. This we think they rightfully could do whether the act be measured by the standard of trade rules or by well established principles of the law of sales. It is doubtless true that owing to the limited supply of corn of the proper grade and the advance in market values, the deal was an unprofitable one for the defendants, but so far as appears from the record there was no unfairness in the transaction. The conclusion of the trial court that defendants are justly indebted to plaintiff for the difference between the agreed price of the undelivered corn and the price at which it was purchased is the only one which is

fairly deducible from the record, and it is therefore *affirmed.*